IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARTHA W.,[1]

Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

Defendant.

No. 6:19-cv-01251-HZ

OPINION & ORDER

Robyn M. Rebers
PO Box 3530
Wilsonville, OR 97070

    Attorney for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

Frederick D. Fripps
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Martha W. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court reverses the Commissioner's decision and remands this case for further administrative proceedings.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB on July 8, 2016, alleging an onset date of March 31, 2016. Tr. 21.[2] Plaintiff's date last insured is December 12, 2021. Tr. 125. Her application was denied initially and on reconsideration. Tr. 21.

      On August 6, 2018, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 21. On September 19, 2018, the ALJ found Plaintiff not disabled. Tr. 21. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on end stage pancreatic failure, chronic pancreatitis, fibromyalgia, congenital fusion of spine, atherosclerosis of kidney artery, prediabetes, right hip joint pain, secondary hypertension, low back 1-5 s-1 disk pain, neck surgery fusion c-5-6-7, and

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 7.

osteoarthritis. Tr. 202. At the time of her alleged onset date, she was 56 years old. Tr.125. She has a General Education Diploma (GED) and past relevant work experience as an administrative clerk and motor vehicle dispatcher. Tr. 26.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets his burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date. Tr. 23. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "chronic pancreatitis, and bilateral hand degenerative joint disease." *Id.* However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 24. At step four, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) with the following limitations:

> the claimant can occasionally climb ladders, ropes, and scaffolds, occasionally crawl, and can have occasional exposure to vibration. The claimant can frequently, but not continuously, handle and finger bilaterally. The claimant requires ready access to bathroom facilities.

Tr. 24. Because of these limitations, the ALJ concluded that Plaintiff could perform her past relevant work as an administrative clerk and motor vehicle dispatcher. *Id.* Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 27.

///

///

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff contends the ALJ erred by (1) failing to provide clear and convincing reasons for rejecting her subjective symptom testimony and (2) failing to include all supported functional limitations in the residual functional capacity assessment. Pl.'s Opening Br. 2, ECF 8. Because the ALJ erred by not including all limitations in the RFC that were supported by substantial evidence, the Court reverses the ALJ's decision and remands this case for further proceedings.

### I. Subjective Symptom Testimony

Plaintiff argues the ALJ failed to provide clear and convincing reasons for rejecting her subjective symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR

16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons" (quotation marks and citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ engages in a two-step analysis for subjective symptom evaluation: first, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." (quotation marks and citations omitted)).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (the reasons

proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony."). Factors the ALJ may consider when making such determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in the testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). In addition, conflicts between a claimant's testimony and the objective medical evidence in the record can undermine a claimant's credibility. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

The ALJ gave two reasons for rejecting Plaintiff's subjective symptom testimony. First, he found inconsistencies between the record and Plaintiff's testimony and a lack of medical evidence supporting some portions of Plaintiff's testimony. Tr. 25–26. Second, he found that some of Plaintiff's symptoms improved with treatment. Tr. 25-26. The Court finds the ALJ erred by not providing clear and convincing reasons supported by substantial evidence to discount Plaintiff's testimony about her pancreatitis, fatigue, severity of her joint pain, and treatment of her malabsorption, but did not err in discounting her testimony regarding effective treatment of her hand and wrist pain.

### B. Inconsistencies with the Medical Record

Inconsistency between Plaintiff's testimony and the objective medical record is a valid reason to discount Plaintiff's testimony. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record).

An ALJ may also consider objective medical evidence in evaluating a plaintiff's subjective symptom testimony, so long as the ALJ does not reject such testimony solely because it is unsubstantiated by the objective medical evidence. 20 C.F.R. § 416.929(c); *Rollins v.*

*Massanari*, 261 F.3d 853, 856, 857 (9th Cir. 2001) ("Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain[;] .... While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." (internal quotation and brackets omitted)); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (The ALJ could consider mild findings on MRIs and X-rays in discounting the plaintiff's testimony as to her back pain.); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("Graphic and expansive" pain symptoms could not be explained on objective, physical basis by claimant's treating physician).

### 1. Wrists and Hands Testimony

The ALJ found that Plaintiff's "hands have mild bilateral degenerative joint disease" and discounted her testimony regarding difficulty using her hands on this basis. Tr. 26.

Plaintiff testified that she has lost strength in her hands, lost muscle mass, and had problems gripping things, and doing activities like fastening jewelry clasps. Tr. 92-93 When the ALJ questioned her about the success of injection therapy, she testified that her doctors had told her that they could not perform more injections because "it's breaking down the cartilage in the wrist." Tr. 75-76. She stated that she uses Lidocaine cream, heat, and ice for relief. Tr. 76.

The record shows progressed joint disease, particularly of Plaintiff's first carpometacarpal joint space. Plaintiff's November 2017 x-ray found "mild degenerative changes of the first carpal metacarpal joint and base of the fifth metacarpal," on the right wrist and "very mild degenerative changes at the first carpometacarpal joint," on the left wrist. Tr. 416. But when

the same 2017 x-ray was interpreted by Plaintiff's treating orthopedic surgeon he found "advanced arthritic changes" in the same joints on both hands. Tr. 395. A subsequent 2018 x-ray found "mild to *moderate* degenerative changes" on the right and left hand and wrists noting "*moderate*" joint narrowing on the first carpometacarpal joint. Tr. 425–426 (emphasis added).

The medical record does not support the ALJ's characterization of Plaintiff's joint disease as "mild." The ALJ's finding that Plaintiff's testimony about the condition of her hands was inconsistent with the record is not a clear and convincing reasons to discount Plaintiff's testimony.

### 2. Fatigue Testimony

The ALJ also noted a lack of objective findings linking her pancreatitis to her alleged fatigue. Tr. 25–26. A claimant need not produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.1996)). While there is not objective medical evidence that confirms Plaintiff's fatigue, this is not a clear and convincing reasons to reject Plaintiff's testimony. Nothing in the record contradicts her testimony regarding her fatigue. Plaintiff reported her fatigue to her doctors and the record supports her diagnosis of chronic pancreatitis. Tr. 285, 386.

### B. Improvement with Treatment

The ALJ may rely on evidence of effective treatment. *See Orteza,* 50 F.3d at 750 ("Factors that the adjudicator may consider when making such credibility determinations include the . . . effectiveness or adverse side effects of any pain medication."); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (claimant's testimony undermined by the fact he responded well to conservative treatment).

### 1. Pancreatitis Testimony

The ALJ found Plaintiff's "pancreatitis stable on medications, with weight gain in 2018." Tr. 26. He did not identify specific testimony to discount on this basis. The record reflects that Plaintiff's weight has remained stable. Tr. 284, 293, 406, 474. It also supports his conclusion that medications have helped stabilized her pancreatitis. Tr. 282, 355, 408. Plaintiff's testimony supports that she augments her nutrition and activity level to manage and prevent acute spells of pancreatitis. Tr. 71.

While the ALJ's conclusion that Plaintiff's pancreatitis has remained stable is supported by the evidence, Plaintiff's symptom testimony should not be discounted on this basis: Plaintiff does not allege that her pancreatitis has *not* been stable on medications. At the hearing, Plaintiff did not testify that she could not maintain weight in recent years or that the medications used to treat her pancreatitis are ineffective. Rather, her testimony suggests she lives with a chronic illness and has developed coping mechanism to manage acute flareups. Tr. 71.

Additionally, as this Court has previously held, "stability of a condition does not undermine a plaintiff's allegations as to the intensity, persistence, or limiting effects of the symptoms of a condition." *See, e.g.*, *Marti Jean K. v. Comm'r, Soc. Sec. Admin.*, No. 6:18-CV-00109-HZ, 2019 WL 3061561, at *7 (D. Or. July 10, 2019); *Timothy S. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-CV-02043-HZ, 2019 WL 2006689, at *5 (D. Or. May 3, 2019) ("[T]he stability of Plaintiff's symptoms does not indicate that the pain is resolved, only that it is not getting worse."); *Kirk M. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-cv-01663-HZ, 2018 WL 6651525, at *4 (D. Or. Dec. 19, 2018) (finding that a plaintiff's stable glaucoma did not mean the plaintiff was no longer visually impaired); *Kimberly S. v. Comm'r, Soc. Sec. Admin.*, No. 3:17-cv-01956-HZ, 2018 WL 6198275, at *6 (D. Or. Nov. 28, 2018) (finding that a

plaintiff's stable mood was unrelated to the opinion of a nurse practitioner that the plaintiff had marked limitations). The ALJ's finding that Plaintiff's pancreatitis has remained stable is not a clear and convincing reason for discounting her testimony about her symptoms and limitations related to her chronic pancreatitis.

### 2. Treatment of Wrists and Hands Testimony

Next, the ALJ found Plaintiff's joint disease improved with injection therapy and discounted her testimony regarding difficulty using her hands on this basis. The record supports the ALJ's finding of effective medical treatment of Plaintiff's wrist and hand pain. In February 2018, Plaintiff reported that the injections "helped a lot" and allowed her to pull up her pants. Tr. 410. Although, Plaintiff states that the pain returned after the injection, the doctor noted that she could have subsequent injections. Tr. 410–411. In June 2018 a second doctor suggested the "next step" in treating her joint pain and de Quervain's tendosynovitis was a "referral to rheumatology for injections." Tr. 787.  Plaintiff argues the injections were for her de Quervain's tendosynovitis, not her joint pain as described by the ALJ. P's Opening Brief at 10. However, the medical record shows the injections were used to treat both conditions. Tr. 411, 787. These findings also directly contradict Plaintiff's testimony that she could not have future injections. The record supports the ALJ's finding that injection therapy increased Plaintiff's function and provides a clear and convincing reasons to discount plaintiff's testimony related to her wrists and hands.

### 3. Treatment of Malabsorption Testimony

At the hearing, Plaintiff attributed her malabsorption, vitamin D deficiency, joint pain, and fatigue to her "bad pancreatic duct" that had damaged her pancreas. Tr. 75.  The ALJ found that Plaintiff's medical records were inconsistent with her statement that her fatigue and joint

pain result from malabsorption caused by pancreatitis because the medical records showed her "malabsorption treated with medications and vitamin supplements" and because in 2018 she gained weight. Tr. 25–26.

The record suggests Plaintiff's malabsorption can be treated with vitamin supplementation but tends to fluctuate and requires active management. In May 2016, Plaintiff's doctors identified low vitamin D levels due to malabsorption and increased her supplementation accordingly. Tr. 300, 285. One-month following the increased supplementation, Plaintiff reported improvements in how she felt because of vitamin D loading. Tr. 285. In December 2017, her doctor noted that her vitamin D levels had improved suggesting supplementation had been effective. Tr. 386. Despite higher vitamin D levels, Plaintiff reported that her fatigue had not improved. Tr. 386. In June 2018, an endocrinologist found "evidence of profound malabsorption of fat-soluble vitamins. Tr. 776. Despite supplementation, Plaintiff's vitamin D levels had dipped to her spring 2016 levels. Tr. 776. Her doctor subsequently increased her supplementation. Tr. 776.

The overall picture supports that Plaintiff struggles with malabsorption of fat-soluble vitamins due to her chronic pancreatitis. While there are points in the record where Plaintiff's malabsorption improved through supplementation, there is not evidence that her malabsorption has been "treated" as the ALJ suggests. Instead, the record shows that even with active management, Plaintiff's malabsorption fluctuated over time. A finding that Plaintiff's malabsorption has been treated is not a clear and convincing reason to discredit Plaintiff's testimony.

In sum, the ALJ erred in discounting Plaintiff's testimony about her pancreatitis, fatigue, severity of her joint pain, and treatment of her malabsorption, but did not err in finding effective

treatment of Plaintiff's hand and wrist pain and discounting her testimony regarding her hands and wrists.

## II. Residual Functional Capacity

Plaintiff contends the ALJ erred in failing to include all supported limitations in Plaintiff's residual functional capacity (RFC). She claims the ALJ should have incorporated more restrictive limitations regarding her need for bathroom access, manipulation, concentration, and attendance.

The RFC is the most a person can do, despite his physical or mental impairments. 20 C.F.R. § 404.1545. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, *available at* 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock*, 240 F.3d at 1163-65. An "RFC that fails to take into account a claimant's limitations is defective." *Valentine*, 574 F.3d at 690.

### A. Bathroom Access

Plaintiff argues that the ALJ erred by failing to account for her need for constant access to a bathroom in the RFC. Plaintiff testified that she is bowel incontinent, cannot tell when she's going to have an accident, and that she has had accidents in multiple settings. Tr. 79, 86, 88. She testified that she wears diapers, limits her travel, and does not eat before traveling in an attempt to prevent accidents. Tr. 86, 88 431. She also stated that she regularly spends long periods of

time in the bathroom. Tr. 86, 88, 89. Plaintiff's doctor described her as incontinent. Tr. 300. In her assessment, the agency physician found Plaintiff needed "constant access to a restroom." Tr. 112.

The RFC provides for "ready access" to a bathroom. Tr. 24. The ALJ's opinion does not explain his use of the term "ready access" versus the term "constant access" used by the agency physician.

During the hearing, the vocational expert differentiated the terms "ready access" and "constant access" and stated that they have different consequences for someone's employment prospects. She testified that she interpreted the ALJ's use of the term "ready access to a restroom" to mean, "[t]hat a restroom would not necessarily be in the next building. Would be a reasonable walking distance. For example, 30 to 60 seconds. Would not require some type of lock." Tr. 102. The vocational expert then testified that most jobs have this type of bathroom access. However, when asked by Plaintiff's counsel at the hearing, the vocational expert testified that it would be "impossible" for an employee to have "constant access" to a restroom. Tr. 103. The question put to the vocational expert defined "constant access" as the employee needing to be stationed by the restroom with a guarantee that nobody else would be in the restroom when the employee needed it. Tr. 103.

Despite this differentiation, the ALJ used the term "ready access" and found Plaintiff not disabled. Tr. 24. The agency physician's assessment supports the conclusion that Plaintiff requires "constant" access to a bathroom. The ALJ gave this assessment "great weight," finding it "consistent with the record as a whole." Tr. 26. He also "accepted" the testimony of the vocational expert in his opinion. Tr. 27. Additionally, the medical record and Plaintiff's

testimony support the need for "constant access" to a bathroom. The ALJ erred in failing to include a more restrictive bathroom limitation in the RFC.

    **B. Manipulation**

As discussed above, the record supports Plaintiff's testimony that she has bilateral wrist and hand osteoarthritis that has limited her function in some respects. Tr. 392, 395, 425–26, 410. The record also supports that Plaintiff has been able to access effective treatments for her wrist and hand pain and the ALJ properly discounted her subjective symptom testimony on this basis. Tr. 410–411, 787. The RFC accounts for Plaintiff's supported limitations with handling and fingering and Plaintiff cites no evidence that explains why a more restrictive limitation is warranted. Tr. 24. The ALJ did not err by failing to include a more restrictive limitation on manipulation.

    **C. Concentration and Attendance**

Plaintiff argues the ALJ erred by failing to include a limitation to unskilled tasks based on her alleged problems with memory and concentration and a limitation related to attendance.

Plaintiff testified that she stopped working in part because she began to make "crucial mistakes" at work. Tr. 69, 85. She also noted problems with confusion and concentration which she attributed to a lack of sleep and absorption of vitamin D. Tr. 87. Plaintiff reported these symptoms to her doctors. Tr. 300 ("too tired, making mistakes); Tr. 385 ("decreased attention span"); Tr. 290 (reported trouble concentrating "more than half the days" on a patient health questionnaire).

Plaintiff testified that she has "bad days" four to five times per month that require her to stay in bed and rest. Tr. 97. As discussed above, her medical record also contains multiple subjective reports of fatigue. Tr. 290, 300, 386. The ALJ asked the VE about attendance and

breaks at work. Tr. 102. The VE stated that a person would not be able to sustain employment if they needed to miss two or more days per work month regularly or required two more additional breaks per workday. Tr. 102. When questioned by Plaintiff's counsel, the VE also agreed that not being consistently on time for work or needing to leave early from work would prevent a person from sustaining competitive employment. Tr. 104.

Plaintiff's alleged limitations related to concentration and attendance stem from her fatigue and malabsorption. Tr. 87, 97. The ALJ improperly discounted her testimony related to these symptoms and her pancreatitis generally. *See supra* Part I. Nothing in the record contradicts Plaintiff's testimony on concentration and attendance and there are no inconsistencies in Plaintiff's reporting of these symptoms to her doctors. The ALJ's opinion does not address these symptoms. Furthermore, despite testimony from the VE on the employment consequences of attendance issues, the ALJ failed to include these limitations or explain why he properly excluded them. The ALJ erred by not considering the possible concentration and attendance limitations associated with Plaintiff's pancreatitis.

### III. Remand for Further Proceedings

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Id.* at 1020; *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the

ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.*; *see also Treichler*, 775 F.3d at 1101 (When all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule."). The "ordinary remand rule" is the proper course except in rare circumstances. *Treichler*, 775 F.3d at 1101.

Plaintiff asserts that a remand for an award of benefits is appropriate here. Pl.'s Op. Br. 16. She argues that the ALJ improperly discounted her symptom testimony. *Id.* She further argues that when her testimony is credited as true, and her need for constant bathroom access is included in the RFC, the ALJ would need to find her disabled. *Id.* at 17.

The Court disagrees. The effect of the term "constant access" is not sufficiently clear on this record. The vocational expert did not independently define "constant access" but responded to a question posed by Plaintiff's counsel. The agency physician, who first used the term "constant access," did not define it either. The question of Plaintiff's disability may ultimately turn on the proper definition of this phrase. The Court cannot determine on this record alone whether the term was properly defined and warrants a finding of disability. Remand for further proceedings will allow the definition of "constant access" and the attendant limitation to be fully developed. Additionally, the possible limitations regarding concentration and attendance are not adequately developed. The record regarding the severity of these limitations and their impact on Plaintiff's ability to work can be developed in further proceedings.

///

///

///

## CONCLUSION

For these reasons, the Commissioner's decision is REVERSED and REMANDED for administrative proceedings.

IT IS SO ORDERED.

DATED:_____November 29, 2020____.

*Marco Hernandez*

MARCO A. HERNÁNDEZ

United States District Judge